# EXHIBIT A

(Part 1 of 6)

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| ROBIN ZAHRAN and | ) | |
| KAREN ZAHRAN, | ) | |
| Plaintiffs, | ) | |
| v | ) | |
| TRANSUNION CREDIT INFORMATION | ) | |
| SERVICES CO./ TRANS-UNION, | ) | Case no. |
| EQUIFAX CREDIT INFORMATION | ) | |
| SERVICES INC,/ EXPERIAN/ | ) | Plaintiffs demand a jury trial |
| INFORMATION SOULTIONS INC / | ) | |
| EXPERIAN, BANK OF AMERICA | ) | |
| (Successor in Interest to MBNA and | ) | |
| LaSalle Bank), | ) | |
| CREDITOR INTERCHANGE LLC, | ) | |
| DISCOVER FINANCIAL SERVICES, | ) | |
| CITI BANK, BARCLAY BANK, | ) | |
| REPUBLIC BANK OF ILLINIOS, | ) | |
| P.N.C. BANK (Successor in Interest | ) | |
| To National City Bank), and LASALLE BANK. | ) | |

Defendants.

---

COMPLAINT

NOW COMES the Plaintiffs, Robin Zahran and Karen Zahran, appearing pro-se and in their own behalf and complain of the above named Defendants and state as follows:

1

## THE PARTIES

1. Robin and Karen are residents of the State of Illinois, residing at 721 Acorn Hill Lane, Oakbrook, IL.

2. Transunion is a credit reporting agency operating out of the State of Pennsylvania. Under information and belief Transunion is an IL corporation domiciled in the State of IL. Transunion is in the business of creating and selling consumer credit reports to consumers and/or distributing them to consumers and prospective lenders, employers and insurers.

3. Experian is a credit reporting agency operating out of Allen, Texas and is a Texas corporation domiciled in the State of Texas. Experian is in the business of creating and selling consumer credit reports to consumers and/or prospective lenders and insures.

4. Equifax is a credit reporting agency operating out of Atlanta, GA. Equifax, under information and belief, is a Georgia corporation and in the business of creating and selling consumer credit reports to consumers and or prospective lenders and insures.

5. Bank of America, referred to herein and throughout as "BOA", is a national banking Corporation operating out of the State of North Carolina and transacts business in Illinois. BOA purchased LaSalle Bank's assets on or about 2008 and became its sole successor in interest. BOA furthermore purchased MBNA credit card services on or about the year of 2007 and became its sole successor in interest.

6. Discover financial services is a national banking and financial services entity engaged in extending student loans to college students operating out of and is located in Salt Lake City, Utah.

2

7.  Citibank and later by Discover financial services. Is a national banking and financial services entity engaged in extending student loans to college students operating out of and is located in New York, New York.

8.  Republic Bank of Illinois is An Ill. banking corporation located in Du-page County Ill. And engages in extending loans to businesses and consumers , Republic Bank took over the mortgage and note previously owned by National Bank of Commerce on Zahrans personal residence located in Oak Brook Ill.

9.  Barclay Bank is a banking institution, who engages in extending loans to U.S. consumers through direct loans and through issuing credit cards and will be referred to herein and throughout as "Barclay."

10. PNC Bank is a wholly owned subsidiary of the PNC Financial Services Group. PNC is the successful in interest to National City Bank, who will be referred to herein and throughout as "NCB" and who extended a line of credit to Zahrans along with extending a depository and checking account to Zahrans between the year of 2008 and the year of 2009 and will be referred to herein and throughout as "PNC".

11. Creditor Interchange is a collection agency engaged in the collection business and is incorporated in the State of Delaware and was retained by BOA to collect on alleged credit card balances from Robin Zahran.

12. LIEB Solutions LLC is a collection agency (who will be referred to herein and throughout as "LIEB"), who was retained by PNC to collect from Zahrans an alleged debt in behalf of PNC.

**13.** LaSalle Bank under information and belief is a national Bank organized in the State of IL. And was located in Chicago IL. Under information and belief LaSalle was purchased in part or in whole by BOA.

## 14. <u>GENERAL ALLEGATIONS</u>

15. On or about January of 2003, Zahrans created a trust commonly known as the 5457 Bay Shore Drive Trust. The Trust borrowed the amount of approximately $504,000 from ABN/AMRO Mortgage (who will be referred to herein and throughout as "ABN") for the purpose of purchasing the property located at 5457 Bay Shore Drive, Sturgeon Bay, WI. The Trust signed a note for the debt to ABN, who was located in Chicago, IL. ABN at a later date sold or assigned the said note and its mortgage security interest to LaSalle Bank. **See copy of note and first page of the Trust's Mortgage attached and marked as Exhibit 1.**

16. LaSalle Bank was ultimately purchased by BOA, along with its assets including the note secured by the mortgage on 5457 Bay Shore Drive Trust signed by the Trustee, Abbas Zahran. LaSalle furthermore loaned Zahrans the amount of $500,000 as a line of credit secured by mortgage on plaintiff's personal residence in the year of 2002.

17. On or about October of 2003, ABN reported the Trust loan to the various credit reporting agencies as Robin and Karen Zahrans' personal loan.

18. Zahrans protested the erroneous reporting to ABN and the credit reporting agencies, Experian, Equifax and Trans-Union. All parties agreed that the credit reporting was made in error and agreed that the debt along with any credit reporting information related to it belongs to the 5457 Bay Shore Drive Trust and not Zahrans. ABN corrected the reporting to the CRI s accordingly.

19. ABN accordingly issued a letter of the party's agreement and removed the erroneous loan reporting as Zahrans' personal loan or mortgage as agreed with CRAs and in compliance with FCRA. **See ABN correspondence attached and marked as Exhibit 2.**

20. Robin Zahran, through early years of 2000, was extended credit by MBNA through two credit cards, each with a separate line of credit  These credit cards numbers  are as follows:

    a.  Master card no. 5490 9936 7207 8062 with a line of credit of $25,000,

    b.  Visa no. 4264 2963 0110 4292 with a line of credit in the amount of $62,100.

21. MBNA also issued a Platinum Plus for a business credit card to Oak Brook Associates Financial Services located at 1301 West 22nd Street, Oak Brook IL, card no. 40364750008844498 with a line of credit in the amount of $50,000.  Zahran was the president of Oak Brook Financial Services at the time. **See copy of the notification to Oak Brook Financial, granting it the Platinum plus card attached and marked as Exhibit 3.**

22. After BOA purchased LaSalle, along with the note and mortgage relating to the 5457 Bay Shore Drive Trust, BOA and its subsidiary, BAC Home Loans, resumed reporting to the various credit reporting agencies the Trust debt in the name of Robin and Karen Zahran personally in contradiction of the prior contractual agreements and the prior understandings between all the parties and applicability of the FCRA.

23. BOA and BAC (a wholly owned subsidiary of BOA) furthermore reported  to the various credit reporting agencies that Zahrans owes BOA on two different loan mortgages, the first Account no. 87341xxxx for the amount of $506.000 and the second account no, 13330000005xxx . **See Equifax credit report relating to BOA and BAC Home Loans reporting attached and marked as Exhibit 4.**

24. Transunion, Equifax and Experian accordingly reported the Trust obligation to all prospective lenders and creditors of Zahrans as the obligation of Robin and Karen Zahran personally without informing Zahrans of the change furthermore reporting falsely and erroneously to CRAs that Zahran owes on two mortgages knowing their reporting to be false and untrue

25. BOA, after protests by both of Zahrans to the CRAs, omitted Karen Zahran as a debtor, naming Robin Zahran only and personally as a debtor on both loans- in breach of the prior agreements with ABN and the CRAs and in violation of FCRA.

26. Despite Zahrans protests and demands for deleting the improper erroneous reporting to BOA, BAC, Experian, TransUnion and Equifax, they all refused- in breach of the prior loan documentations and agreement entered into between Zahrans, ABN, the original lender and the CRA's. **See some of Zahrans' various demands for corrections attached herein and marked as Exhibit 5.**

27. BOA, without authorization, permission, knowledge or notice to Zahran, changed the loan title and the holder's name from the 5457 Bay Shore Drive Trust to Robin Zahran personally and reported the loan obligation and history accordingly to CRAs without Zahran's knowledge or approval.

28. Under information and belief, BOA took this act willfully and wantonly- motivated by malice in reclassifying the loan to Zahran personally rather than the Trust to intentionally, maliciously and wantonly harm Zahran's credit rating in retaliation against Zahrans for filing suit against BOA in the Circuit Court of Cook County for specific performance.

29. Zahrans, on various occasions and up to present day, protested the erroneous reporting to Experian, Transunion and Equifax by demanding the deletion of the erroneous reporting by

BOA and BAC from the credit reports. Experian, Transunion, and Equifax refused, stating they investigated Zahrans' complaint thoroughly with BOA and BAC home loans and found BOA and BAC reporting to be accurate as the furnishers of the information.

30. On or about December of 2007, BOA, through its collection agency or agent by the name of Creditor's Interchange (who will be referred to herein and throughout as CI), offered Zahran to release him of any and all of obligations and liabilities to MBNA and BOA of his credit account balances in exchange for the payment of $21,804,00. Zahran accepted the offer and paid accordingly. **See copy of written offer for specific promises by the Creditor Interchange along with evidence of Zahran's payment attached and marked as Exhibit 6.**

31. BOA, pursuant to the agreement, issued an IRS 1098 income statement on or about the year of 2011 to Zahran declaring the amounts of reduction for the amounts claimed as owed but settled through the settlement of the credit cards accounts balances as income to Zahran personally. Zahrans claimed the settled amounts as taxable income. **See 1098 forms attached and marked as Exhibit 7.**

32. BOA, despite agreeing to the settlement agreement and receiving the total amount agreed upon as the consideration by CI its agent, continued up to present day to report that the settled credit card balances were still unpaid and were totally written off as bad debt in breach and in violation of the parties' settlement agreement of 2008.

33. BOA, through CI, promised in exchange for the payment made to report to CRAs that the credit cards status and balances as paid in full. BOA and CI forfeited their rights to claim or report any derogatory comments to the various credit reporting agencies as agreed.

34. BOA, after receiving the payment through Creditor Interchange and in breach of the parties agreement and settlement, reported that BOA had written off the entire amount of $41,183.00 on account number 4264296301104292 in breach of BOA and Interchange representations and

inducment to Zahran prior to Zahran's payment in which they agreed that they will instruct the credit reporting agencies to report that the credit cards balances were paid in full.

35. BOA furthermore reported Oak Brook Associates Financial Services credit card as the obligation of Robin Zahran personally to Experian, Trans-Union and Equifax at the time BOA knew the obligation was that of Oak Brook Financial alone utilized for the business purposes of Oak Brook Associates and not Zahran.

36. BOA furthermore attempted to collect on the settled account and on the alleged debt of Oak Brook Financial from Robin Zahran personally through its various collection attorneys and/ or agencies by the name of Mann Bracken and others, who harassed Zahran continuously for a period in excess of 2 years despite Zahran's demands for these harassment and phone calls to cease, but to no avail. **See Mann & Bracken's correspondence attached and marked as Exhibit 8.**

37. Zahran protested BOA and Mann Bracken's fraudulent demands for payments of the settled and released debts or debts not owed by Zahran but of Oak Brook Financial but to no avail.

38. Zahran protested the erroneous reporting to Experian, Equifax and Transunion- demanding correction and deletion of these erroneous reporting's in his Credit reports. The credit bureaus in turn promised investigation of the facts but ultimately refused to correct the erroneous reporting, informing Zahran that after careful investigation, the three bureaus determined BOA's reporting to be correct despite Zahran provided proofs to CRAs.

39. On or about the month of October of 2002, Zahrans borrowed from LaSalle the amount of $500,000 as a line of credit, utilizing their personal residence at the time located at 718 Acorn Hill Lane, Oakbrook, IL as a security for the loan by granting LaSalle a mortgage lien on their residence.

40. On or about Jan. of 2008, Zahrans sold their residence subject of LaSalle loan for the amount of $1,350,000 and requested a payoff letter from LaSalle for the balance of the loan prior to closing. Zahrans furthermore directed Chicago Title (as the closing escrow agent) to pay off the entire balance of the amount calculated as owed and demanded LaSalle. **See LaSalle's letter for the payoff amount, along with the closing statements by Chicago Title evidencing payment of the amount requested by LaSalle attached herein and marked as Exhibit 9.**

41. On or about March of 2008, LaSalle Reported to the CRAs that it had written the entire loan off as a total loss despite receiving the amount of the pay-off in full as requested and calculated by LaSalle, and in breach of its own demands, calculations and representations of the pay-off amount.

42. LaSalle, on later occasions, changed the report after Zahran's protests to the CRAs and reported the loan as paid but for an amount less than the amount owed.

43. Zahrans again protested the erroneous and wrongful reporting to Experian, Transunion, and Equifax by demanding removal of the derogatory and false reporting by LaSalle. They in turn promised to thoroughly investigate Zahrans' complaints but failed to investigate as promised and refused to correct LaSalle's derogatory reporting representing LaSalle notified them that the information's provided are accurate. The CRAs are refusing to give accurate contact information as to how to contact LaSalle up to present day despite Zahrans various requests.

44. On or about 2007/2008, NCB extended an unsecured line of credit to Zahrans in the amount of $100,000 at the interest rate of prime minus one for business purposes.

45. On or about October of 2007 or early 2008, NCB opened checking accounts for Robin and Karen Zahran at its Oak Brook branch office.

46. These checking accounts became overdrawn by agreement and per the authorization of NCB bank officers in charge of Zahrans' accounts in anticipation of a bond issuance financing by NCB to a company owned by Zahrans which never materialized due to NCB inactions and breaches of agreements.

47. Zahrans, as a result of infractions and breaches by NCB unrelated to the issues of this complaint, ceased payments to NCB on the line-of-credit and the overdrawn checking accounts.

48. Subsequent to the disputes between the parties and in absence of resolution, Zahrans ceased to transact business with NCB which was later acquired by PNC Bank on or about the year of 2009.

49. PNC in turn filed a collection complaint in Du-Page County Circuit Court against Zahrans, demanding payments in an amount in excess of $128,000. Shortly thereafter Zahrans were granted leave to file their counterclaims against PNC as the successor in interest to NCB.

50. PNC thereafter offered Zahrans to settle any and all disputes and all claims of any nature between the parties, Whereas Zahrans would release their claims against the bank and pay PNC the amount of $40,000 in four equal installments in exchange for a total release by PNC of any and all claims for any and all amounts owed to PNC by Zahrans and for a total release of any and all claims of any nature between the parties against each other. Zahrans performed and fulfilled all of the settlement agreement provisions as agreed. **See settlement agreement, Exhibit 10.**

51. PNC, subsequent to entering into the settlement agreement and receiving the first payment, refused to honor its provisions as agreed upon, including the total release of any and all claims or rights to claims as called for in the settlement agreement as follows:

a.  PNC continued to report that Zahrans were delinquent on their payments of their obligations and line of credit to PNC to the various credit reporting agencies.

b.  PNC continued to report that Zahrans failed to pay the total amount owed in full and only paid a partial amount of the amount owed.

c.  PNC had written the entire amount of Zahrans' debt off in violation of the specific settlement agreement provisions, calling for the total release of all rights and obligations of any kind and of all claims past and present between the parties.

d.  PNC, subsequent to the settlement agreement, refused to remove the derogatory comments to Experian, Equifax and TransUnion credit reporting agencies and insisted on the continuation of the reporting of the derogatory statements in breach of the settlement agreement.

e.  Zahrans contacted the various credit reporting agencies, demanding the deletion of PNC's erroneous reporting and for proper investigation of PNC reports and statements in lieu of the parties' settlement agreement.  Experian, Equifax and Transunion refused to correct the erroneous reports- claiming they investigated the facts and found PNC reporting's were correct further informing Zahrans that PNC information provided to them will not be removed from Zahrans' credit files despite the settlement agreement a copy of which was forwarded to the three bureaus by Zahrans.

f.  Contrary to the settlement agreement provisions between the parties for the total release of any and all claims, PNC, after entering into the settlement, demanded payments for the amount of $40,904.98 from Zahrans for amounts allegedly owed on an overdrawn checking account which have been

11

released and settled in breach of the settlement agreement provisions of the total release between the parties.

g.  PNC, furthermore and after the settlement agreement was entered into and despite its provisions for total release between the parties of any and all claims past and present, contracted LIEB Collection Agency and assigned them the task of collection on the overdrawn checking accounts balances which were settled and released through the settlement agreement provisions. **See PNC and LIEB Collection Agency correspondence demanding payments on the overdrawn checking account which has been released attached and marked as Exhibit 11.**

h.  PNC and it's assigned collection agency harassed Zahrans for a long period of time during various hours of the day and night and through phone calls despite Zahrans reminding them of the settlement agreement provisions and it's conditions of total and unequivocal release to no avail.

i.  Zahrans, subsequent to discovery of PNC reporting's, contacted Experian and Transunion on numerous occasions demanding that they cease and desist the erroneous reporting provided to them by PNC. Experian, Transunion and Equifax refused even after they were provided with the settlement agreement representing that they thoroughly reinvestigated the PNC reporting's and determined them to be accurate. **See PNC reports to the credit reporting agencies, attached and marked as Exhibit 12.**

52. On or about October of 2004, Zahrans purchased their residence located at 721 Acorn Hill Lane, Oakbrook, IL and borrowed the amount of $960,000 from the NBC to mortgage said property. NBC extended a mortgage to Zahrans secured by the mortgaged real estate property. The CRAs are erroneously reported the mortgage as a line of credit rather than a mortgage

53. On or about the year of 2007, Robin Zahran co-signed an application for a student loan for the benefit of his daughter Carmel Zahran from the Student Loan Trust commonly known as (SLC).

54. Upon Carmel's graduation, she joined the U.S. Athletic Olympic team competing for representation of the U.S. Olympic Women's Rowing Team in London in 2012 and therefore applied and took a deferment of the payments due on her student loans along with interest payments due and owing on these loans to SLC through its administrator at that time Citibank. **See Carmel Zahran request for deferment attached herein and marked as Exhibit 13.**

55. Upon discovery by Zahran of the reporting on his credit reports by/Citibank to CRAs that the payments on Carmel's loan were late or not paid. Zahran contacted Citibank and CRAs requesting investigation of the erroneous reporting's. Citibank, after investigation agreed to notify the CRAs to delete the erroneous information given to them, finding that Carmel's deferment was agreed to and approved and accordingly directed CRAs to delete the erroneous information of delinquent payments from their records. **See SLC /Citibank letter and research affirming the deferment attached herein and marked as exhibit 14.**

56. Robin Zahran was not the direct borrower and was only a co-signor guarantor of Carmel's student loan. Moreover, Citi Banc never notified Zahran nor invoiced him nor requested or demanded payment from him on Carmel's loans at any time from the inception of the loan to present day.

57. Citi Bank in the year of 2010, erroneously reported to Experian, Equifax, and Trans-Union that Robin Zahran was late in paying the monthly payments due as scheduled on Carmel's student loans to which SLC had already agreed for deferment.

58. Zahran contacted Citibank (the administrator at the time), who checked the records and admitted to the erroneous reporting and the agreement for deferment. Citibank notified Zahrans and promised to correct the erroneous reporting to the various credit reporting agencies but never did.

59. Zahran subsequently contacted Experian, Transunion and Equifax by demanding correction as agreed with Citibank and SLC demanding the removal of the erroneous reporting by Citibank and SLC as to the loan status and the co-signing status of Robin as a guarantor and not as the direct borrower. Zahran provided all of them with Citibank's correspondence relating to the deferment. All parties agreed to investigate and correct if warranted.

60. Experian, Equifax and Transunion, after their alleged investigation, refused and failed to remove the derogatory statements from Zahran's credit reports despite numerous requests, demands and proofs provided by Zahran.

61. Discover Financial Services, on or about early 2013, took over the administration of Carmel's loans from Citibank and continued their erroneous reporting of Carmel's student loan status as Citibank did earlier.

62. Discover, upon Zahran's protests and demands for removal of the erroneous reporting from his credit reports, promised to investigate and correct if warranted. Discover thereafter refused to correct as promised, stating they investigated SLC and Citibank reporting's and found them to be accurate despite their own letter sent to Zahran recognizing the erroneous reporting to the credit reporting agencies. **See letter from Discover attached hereto and marked as Exhibit 15.**

63. On or about October of 2004 Zahrans and national Commerce Bank entered into a note and mortgage agreement in which Zahrans borrowed the amount of $960,000 to purchase their residence and extended a mortgage to NBC as collateral

64. NBC was taken over in the year of 2008 Republic bank who erroneously began reporting the Loan and mortgage as a line of credit and not as a mortgaged loan on real estate secured by Zahrans residence to the various CRA

65. Zahrans protested the reporting to the RB and to the various CRA(s) to correct the reporting and to reflect the loan as a mortgage but to no avail

66. Zahrans sustained and continue to sustain damages as a result of Republic actions and reporting's

67. On or about April of 2006, Karen Zahran responded to a solicitation by Barclay Bank-offering to extend her an AirTran's Visa credit card in the amount of $4,000 line of credit. Barclay further offered Robin Zahran a U.S. Air Master card sponsored credit card for a business line of credit in the amount of $25,000 and a Trans-Air visa card with $10,000 line of credit. Zahrans agreed to these offers and acquired these credit cards accordingly.

68. Karen Zahran paid all of her Visa credit card charges in full when due.

69. On February 6, 2008, Karen Zahran received correspondence from Barclay of her alleged outstanding credit card balance after the account was cancelled notifying her of her credit card balance in the amount of $109.98 demanding final payment. **See correspondence by Barclay to Karen Zahran attached herein and marked as Exhibit 16.**

70. Karen thereafter contacted Barclay ad CRAS, informing them of their erroneous accounting and applications of her payments, bringing to their attention her discovery of the payments made and paid from her Park Federal Bank checking account towards her credit card account

which were credited in error to Robin Zahran's credit cards accounts balances. Barclay promised to correct the erroneous crediting and issue Karen credits for amounts paid and or overpaid but never did despite her numerous requests and demands.

71. Barclay refused to refund Karen the over payments made and failed to provide accounting for the alleged charges and purchases resulting in Karen Zahran's refusal to pay the amount of $109.98 being claimed as owed by Barclay.

72. On December 7, 2007, Robin received a letter cancelling his credit card account from Barclay, demanding payment for the alleged outstanding balance of $8,706.93. Zahran disputed this alleged claim but Barclay ignored his protests. **See correspondence from Barclay to Robin Zahran attached herein and marked as Exhibit 17.**

73. Barclay, as the result of the dispute and failure to provide actual and proper accounting and after escaping its duty to provide the required accounting, transferred and/or sold the alleged credit cards balances to Harvest Credits prior to resolving the dispute.

74. Harvest Credit in turn filed suit in Du-Page County, IL for collection against Robin Zahran in an amount allegedly due on both of Robin's credit cards in excess of $39,000.

75. Zahran thereafter demanded strict proof of the allegations pled by Harvest Credit but Harvest failed to produce the proofs required and demanded.

76. The parties finally agreed to a settlement upon which Zahrans would pay the amount of $7,500 in exchange for a total release of any and all claims of any kind by Harvest Credit and/or Barclay between the Parties and for reporting the debt if owed as settled and paid in full.

77. Zahran performed and complied with the settlement agreement and paid the amount of $7,500 as agreed based on the promise by Harvest to release any and all claims and/or

negative credit reporting by Harvest Credit and Barclay to Experian, Equifax and Trans-Union.

78. Harvest Credit and Barclay, after receiving the settlement agreement payment, persisted in their reporting to the various credit reporting agencies by stating that Zahrans were late in payments and that the credit card balances were written off, knowing their statements were false and contrary to the parties' agreement.

79. Zahrans, upon discovery of the erroneous reporting by Barclay to Experian, Equifax and Trans-Union, contacted Barclay and the CRA s and demanded that Barclay remove the derogatory reporting to the various credit reporting agencies as agreed by Harvest but Barclay refused.

80. Zahrans thereafter protested Barclay's erroneous reports to the various credit reporting agencies (Experian, Equifax and Transunion), who in turn promised to thoroughly investigate Barclay's reporting along with Zahrans' complaints and correct the derogatory reporting, if warranted.

81. The various credit reporting agencies, after their alleged investigation of Robin and Karen's protests of the Barclay erroneous reporting, contacted Zahrans, informing them that the Barclay reporting is correct and will stay on Zahrans' credit report as reported by Barclay.

82. On or about May of 2011, Experian, Transunion and Equifax reported that Karen Zahran owed and had failed to pay eight (8) tax liens assessed and recorded against her in Fulton County, State of Georgia for unemployment tax payments, allegedly owed as a result of a claim by the State of Georgia Department of Unemployment Security against American Consumer Products Corporation.

83. Karen Zahran protested the credit reporting agencies' derogatory comments and erroneous reporting by Experian, Transunion and Equifax that were contained in her credit reports. She placed them on notice that she had no responsibility to these alleged taxes, nor was she associated or responsible to American Consumer Products Corporation tax liabilities whatsoever. Experian, Transunion and Equifax promised to thoroughly investigate Karen's complaint and protests of the erroneous reporting of the tax liens placed in her credit report and to investigate if these liens were for personal or business and if these taxes were her personal liability and will act accordingly.

84. These reporting agencies thereafter responded to Karen's complaint and protests, informing her that they investigated the reporting's by the GA Department of Unemployment Security and found them to have been correctly placed on her personal credit report as a personal consumer obligation and will remain as has been reported earlier. **See the credit reporting agencies credit reports relating to the tax liens as a personal obligations of Karen Zahran, attached herein and marked as Exhibit 18.**

85. Karen subsequently contacted the Georgia Department of Labor challenging the erroneous reports and their placement in her credit reports.

86. The Georgia Department of Labor, pursuant to Karen's protests, removed these liens reflecting her not personally responsible and confirming that these liens were contrary to The Federal Credit Reporting Act and further stating that they notified the credit reporting agencies that Karen Zahran was not the responsible party at the time of the first investigation of these reports by Experian, Transunion and Equifax.

87. After various protests by Karen and threat of a legal action and after much damage and loss, Experian, Transunion and Equifax removed the liens from Karen's credit reports.

## DAMAGES

88. Zahrans sustained damages as the direct and proximate result of these named Defendants' erroneous actions, breaches of contracts, fraud, consumer fraud, negligence and the constant, improper erroneous and negligent reporting relating to these plaintiffs' credit resulting I these plaintiffs inability to borrow funds to finance their manufacturing and farming businesses resulting in direct losses in excess of $10,000,000, and in additional consequential losses in excess of additional $15,000,000 and in severe emotional distress.

## COUNT I

### Fraud in the Inducement against BOA and Creditor Interchange

89. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 82 relative to BOA and Creditors Interchange along with the relative Exhibits attached to this Count and specifically paragraphs 1-5 and 9 and paragraphs 11-36 of the general allegations as paragraph 1 of this count for Fraud in the Inducement against BOA and Creditors Interchange.

90. The Defendants utilized the false promises made as described in the above paragraphs to induce Zahran into entering into agreement with Creditor Interchange and BOA for the purpose of abandoning Zahrans' claims against BOA and for the payment of the amount $21, 804, 00 to Creditor Interchange.

91. BOA and Creditor Interchange furthermore promised Zahran that in exchange for the payment of the $21, 804, 00 that they would notify the credit reporting agencies and inform them that the amount of debt was paid in full.

19

92. BOA nor Interchange had any intension of fulfilling their future promises stated, used, employed and utilized to induce Zahran into paying the amount of $21,804,00.in reliance on these promises

93. Zahran relied on Defendant's representations and promises to enter into agreement. He accepted the offer as shown and paid the amount of $21,804.00 and released his claims against BOA as a result of this reliance to which he was justified in reliance on defendant's promises.

94. Zahran sustained damages as a result of Defendants' inducements, contributions and actions in an amount in excess of $10,000,000 and consequential damages in an amount in excess of $15,000,000.

WHEREFORE, Zahran prays for judgment against each of BOA and Creditor Interchange for all damages sustained in an amount in excess of $10,000,000, and in an amount of consequential damages in excess of $15,000,000, along with costs of suit, attorney fees and legal costs and for punitive damages in an amount in excess of $10,000,000, enough to deter these Defendants from similar conduct in the future against others.

## COUNT II

### Breach of Contract against BOA and Creditor Interchange

95. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 82 relative to BOA and Creditors Interchange along with the relative Exhibits attached to this Count and specifically paragraphs 1-5 and 9 and paragraphs 11-36 of the general allegations as paragraph 1 of this count for Breach of contract against BOA and Creditors Interchange.

96. The named Defendants in this count offered Zahrans that in exchange for the payment of $21,804. BOA and CI will treat the credit card balances as fully paid and as a full satisfaction of debt owed by Zahran to BOA on the credit cards balances and to report and instruct all credit reporting agencies to consider the debt as paid in full without derogatory statements.

97. Zahran performed all of what was required of him under the agreement shown in exhibit 10 attached to this complaint. BOA and Interchange breached their duty of good faith and fair dealings implied in every contract under IL law, especially where the performance of the contract entered into places the duty of performance for the most part on one party based on the other party's lack of ability to engage in the execution of the provisions of the agreement stipulated for, other than the performance of the payment as called for in the agreement.

98. The Defendants named in this count breached their contract with Zahran and refused to honor their commitment to report to CRI that Zahran's credit card account balance was paid in full as agreed willfully and intentionally and failed to direct them to omit the derogatory statements from Zahran's reports.

99. These Defendants, despite their agreements, continued their erroneous reporting to the various credit reporting agencies in breach of their agreement with Zahran until present day.

100. The Defendants, in particular BOA contrary to agreements, is persisting on breaching the contract through the present day by falsely reporting to the various credit reporting agencies that the credit card balance was written off and/or paid for less than the amount owed.

101. BOA, despite the settlement of debt and despite knowing that certain debts where not Zahrans' personal responsibility or obligation and despite claiming these debts as income given to Zahran, retained and/or sold or assigned these alleged claims to various collection agencies and attorneys for collection in breach of the agreements.

102. Zahran, as a direct and proximate result of BOA's actions and breaches, sustained direct and approximate damages as a result in an amount of direct damages in excess of $10,000,000 and consequential damages in excess of $15,000,000, in addition to special costs along with consequential damages and legal fees.

WHEREFORE, the Plaintiff, Robin Zahran, pray that the Honorable Court grant him judgment against each of the Defendants for the amount of direct losses in excess of $10,000,000, and for the amounts of damages sustained or to consequential damages in excess of $15,000,000 along with cost of suit.

## COUNT III

### Violations of the IL Consumer and Deceptive Practices Act
### Against BOA and Creditor Interchange

103. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 82 relative to BOA and Creditors Interchange along with the relative Exhibits attached to this Count and specifically paragraphs 1-5 and 9 and paragraphs 11-36 of the general allegations as paragraph 1 of this count against BOA and Creditors Interchange for Violations of the IL Consumer and Deceptive Practices Act.

104. While Plaintiffs and Defendant were negotiating the settlement agreements, there existed in the State of Illinois a statue called the IL Deceptive and Consumer Fraud Act. 815 ILCS 5052 which provides:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use of employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful

whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a) of the Federal Trade Commission Act.

The Defendant violated the provision of the IL Deceptive Practices Act as specifically alleged above and utilized, employed and instituted deceptive practices as pled above.

105. These Defendants named in this count had no intension of fulfilling their promises and agreements and used these promises to induce Zahran to rely on them and perform accordingly to his damage of which he did.

106. Zahran sustained damages as the direct and proximate result of Defendants' actions and contributions in an amount in excess of $10,000,000, along with consequential damages in excess of $15,000,000.

WHEREFORE, Zahran prays for judgment against the Defendants for all damages sustained, along with costs, legal fees and for punitive damages in an amount in excess of $25,000,000, for direct and consequential damages and for an amount in excess of $10,000,000 enough to deter these Defendants from similar conduct in the future.

## COUNT IV

### Fraud against BOA and Creditor Interchange

107. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 82 relative to BOA and Creditors Interchange along with the relative Exhibits attached to this Count and specifically paragraphs 1-5 and 9 and paragraphs 11-36 of the general allegations as paragraph 1 of this count against BOA and Creditors Interchange for common law.

108. Zahran further re-plead as part of this count paragraphs 82-107 relating to promises, and as to when, where and how Defendants perpetrated the acts of fraud on the Plaintiff.

23

109. The Defendants made the promises intending Zahran to rely on them for his detriment, moreover it was foreseeable by the defendants to expect Zahran's reliance.

110. Zahran in fact relied on Defendants promises as expected to his damage and detriment and sustained damages as a result.

111. Zahran sustained damages as a direct and proximate result of these Defendants' conduct and fraud and contributions and through relying on their representations throughout as outlined in the above paragraphs in an amount in excess of $10,000,000 and in consequential damages in an amount in excess of $15,000,000.

WHEREFORE, the Plaintiff, Robin Zahran, pray that the Honorable Court grant plaintiffs judgment against each of the Defendants for the amount of direct damages in excess of $10,000,000 in addition to consequential damages in excess of $15,000,000 and for costs, legal and attorney fees and for punitive damages in excess of $10,000,000 to deter Defendants from similar conduct in the future.

## COUNT V

### Estoppel against BOA and Creditor Interchange

112. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 82 relative to BOA and Creditors Interchange along with the relative Exhibits attached to this Count and specifically paragraphs 1-5 and 9 and paragraphs 11-36 of the general allegations as paragraph 1 of this count against BOA and Creditors Interchange for Estoppel.

113. Zahran further re-plead as part of this count paragraphs 82-107 relating to promises, and as to when, where and how relating to promises and commitments made by Defendants to Plaintiff to induce him into entering into agreements with them.

24

114. BOA and Interchange entered into a specific agreement with Robin Zahran relating to the payment of the credit card debt owed to BOA and their reporting to the various credit reporting agencies. Zahran performed all of what was required of him by paying the amount agreed upon.

115. Zahran relied on this Defendant's promises, commitments and representations as provided to him in exchange for the payment of $22,000.

116. The Defendants, contrary to agreement to report the BOA credit card debt as paid in full refused to report it as paid in full after receiving Zahran's payment in breach of the parties' agreement.

117. BOA moreover referred the balance of the amount settled by the Bank to Mann/Bracken Agency and later to Attorney Zwicker Law Firm and others to collect the amount that had been released through settlement.

118. Defendant, contrary to agreement, reported the balance unpaid by agreement to the various credit reporting agencies as unpaid and as written off, contrary to promises and commitment made.

119. The Defendants are herein estopped from adopting a contrary position to that of what has been agreed upon and executed and for which a consideration has been given and accepted.

120. The Defendants' agreement with Zahrans are enforceable and binding on the parties under IL law, including the refraining from reporting any adverse reporting contradicting the agreements and declarations between the parties to the various credit reporting agencies.

121. These Defendants named in this count are therefore estopped under IL law from claiming any defense, position or contention- opposite that position of what was specifically agreed upon between the parties through certain agreements, contracts or settlements.

25

WHEREFORE the Plaintiff pray that the Honorable Court enter an order forbidding the Defendants from advancing any contention opposite or contradicting what has been agreed upon by the parties through their contract.

## COUNT VI

### Estoppel against LaSalle

122. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 82 relative to LaSalle Bank, along with the relative Exhibits attached to this Count and specifically paragraphs1-5, 11 and paragraphs 36-41 of the general allegations as paragraph 1 of this count against LaSalle for Estoppel.

123. Zahran further re-plead as part of this count paragraphs 82-107 as to when, where and how relating to promises and commitments made by defendant LaSalle to plaintiff to induce him into entering into agreement with LaSalle.

124. LaSalle entered into a specific agreement with Robin Zahran relating to the payment of the outstanding line of credit. Zahran performed all of what was required of him by paying the amount agreed upon at closing. See Exhibit 9 attached to this complaint.

125. The Defendants contrary to agreement to report LaSalle debt as paid in full refused to report it as paid in full after receiving Zahran's payment in breach of the parties' agreement.

126. Defendant, contrary to agreement, reported to the CRAs that Zahrans failed to pay the debt and that LaSalle had written the debt off and as unpaid and as written off, contrary to promises and commitment made and of LaSalle own calculations and representations of the accurate amount owed.

127. The Defendant is herein estopped from adopting a contrary position to that of what has been agreed upon and executed and for which a consideration has been given and accepted.

128. The Defendant's agreement with Zahrans are enforceable and binding on the parties under IL law, including the refraining from reporting any adverse reporting contradicting the agreements and declarations between the parties to the various credit reporting agencies.

129. LaSalle is therefore estopped under IL law from claiming any defense, position or contention- opposite that position of what was specifically agreed upon between the parties through certain agreements, contracts or settlements.

WHEREFORE the Plaintiff pray that the Honorable Court enter an order forbidding the Defendant from advancing any contention opposite or contradicting what has been agreed upon by the parties through their contract.

## COUNT VII

### Fraud in the Inducement against PNC

130. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 82 relative to PNC, along with the relative Exhibits attached to this Count and specifically paragraphs 1-4,8 and 42 -49 47 as paragraph 1 of this count for Fraud in the Inducement against PNC.

131. PNC offered to enter into a settlement agreement with Zahrans, referencing all alleged debts owed by Zahrans to PNC, including the amount owed on a line of credit extended by CNB, (PNC's predecessor) to Zahrans through PNC agent and attorneys.

132. Zahrans counter proposed and offered to pay PNC the amount of $40,000 in four equal quarterly installments in exchange for total release of any and all claims between the parties, including all of Zahrans' claims against PNC and PNC claims against Zahrans- consisting of any and all debts including the overdrawn deficit balances in the prior Zahrans' checking accounts with NCB.

133. PNC accepted Zahrans 'counter-offer and drafted the settlement agreement by promising Zahrans to execute fully and faithfully all of the provisions of the settlement agreements as agreed.

133. Zahrans executed the settlement agreement in reliance on PNC promises, commitments and inducment. Accordingly, the Zahrans waived and released all of their rights through releasing their various cause of actions and valuable claims against NCB and PNC forever and with prejudice.

134. The Plaintiffs relied on PNC's promises, inducements and release agreement and would not have entered into that agreement but for the promises and commitments made by PNC prior to and through the negotiations leading to the settlement agreement.

135. PNC, after Zahrans signed the release and settlement agreement, refused to execute the provisions of the agreement as promised and refused to delete the negative reporting to the various credit bureaus, resulting in damages as described in paragraph 82.

136. PNC knew while negotiating the provisions of the settlement agreement that they never intended to execute or carryout what was being promised and would be required and utilized by them to induce Zahrans into entering into the settlement agreement as ultimately was agreed upon.

137. PNC, contrary to the settlement agreement provisions relating Zahrans' debts which were compromised in exchange for payment and the release of Zahrans' valuable claims, persisted on reporting to the credit agencies that Zahran debts were paid for a less amount than what was owed despite Zahrans various protests to PNC and the CRAs agencies.

138. PNC, furthermore, contrary to the settlement agreement provisions, attempted to collect on the overdrawn checking accounts which have been released by the operation of the settlement agreement.

139. PNC, after refusal by Zahrans to pay the amounts demanded to be paid for the released over-drawn checking accounts, assigned or sold the claim to LIEB collection agency for collection of an illegal debt. Zahrans refused payments after long harassment by LIEB.

140. Zahrans, as the direct and approximate result of Defendant's actions conduct and contribution, sustained damages and losses in excess of $10,000,000 in addition to consequential damages in excess of $15,000,000 and continue to sustain damages to present day.

WHEREFORE, the Plaintiffs pray for the Honorable Court to grant:

a. Judgment against PNC for an amount in excess of $10,000,000 and for consequential and contributory damages in excess of $15,000,000.

b. For legal fees and costs of suit.

c. For punitive damages enough to prevent and deter Defendant from similar conduct in the future against others in an amount in excess of $10,000,000.

## COUNT VIII

### Breach of Contract against PNC

141. The Plaintiffs re allege the relative paragraphs plead in paragraph 1 through 82 relative to PNC, along with the relative Exhibits attached to this Count and specifically paragraphs 1-4, 8 and 42- to 49 as paragraphs 1of this count for Breach of Contract Against PNC.

142. PNC and Zahrans entered into a settlement agreement contract pursuant to the provisions outlined in PNC settlement offer as drafted.

143. Zahrans performed all of what was required of them pursuant to the agreement between the parties as stated above and paid all amounts of compromise and released their valuable claims as the consideration for the settlement contract.

144. PNC breached the agreement and continued to breach it up to present day by refusing to delete the negative information given to the credit bureaus as of the effective date of the agreement (1/01/2011), refused to perform on the remaining provisions of the agreement up to present date, and by further attempting to collect on debts that have been settled compromised and released.

145. PNC breached its duty of good faith and fair dealings implied in in every contract under IL law, especially where the performance of the contract entered into places the duty of performance for the most part on one party based on the other party's lack of ability to engage in the execution of the provisions of the agreement stipulated for, other than the performance of the payment as called for in the agreement.

146. Zahrans sustained and continue to sustain damages in an amount in excess of $10,000.000 as a direct and proximate result of PNC's breach of contract and breach of their duty of good faith and fair dealings, in addition to consequential damages as a result of PNC's conduct in an amount in excess of $15,000,000.

WHEREFORE, Zahrans pray that the Honorable Court grant judgment in their behalf and against PNC for:

    a. Direct Defendant to delete all negative reporting to the credit reporting agencies,

b. For an amount of damages in excess of $10,000,000 caused by PNC's breach of contract,

c. For consequential damages in an amount in excess of $15,000,000,

d. For costs of this suit.

## COUNT IX

### Fraud against PNC

147. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 82 relative to PNC, along with the relative Exhibits attached to this Count and specifically paragraphs 1-4,8 and 42- 49 as paragraph 1 of this count for Fraud against PNC.

148. Zahrans relied on PNC specific promises made as alleged in the prior paragraphs to enter into the settlement agreement with PNC.

149. It was reasonable and foreseeable for Zahrans to rely on PNC promises as Zahrans did not believe nor imagined that PNC would discard their promises as agreed upon in lieu of the bank's visibility on the national and local scene.

150. It was foreseeable by PNC to realize that Zahrans would rely on PNC promises and commitments promised in the settlement agreement proposed by PNC.

151. PNC made their representations and promises to Zahrans, promising to release any and all of their claims against Zahrans of any kind in exchange of Zahrans' promises for releases and payment.

152. PNC, as demonstrated by their conduct and e-mails a copy of which is attached and knew that they did not intend to execute nor intended to execute on the promises made prior to entering into the agreement with Zahrans on 1/01/2011 as promised and as agreed.

153. Zahrans were prejudiced prior to signing the agreement as shown.

154. PNC knew their statements, promises and representations were false when they made them to Zahrans but made them so that Zahrans rely on them to their detriment.

155. Zahrans in fact relied on PNC promises to their detriment and entered into the settlement agreement and forgave valuable claims, resulting in damages.

156. Zahrans sustained damages as the direct and approximate result of Defendant's conduct and false promises in excess of $ 10,000,000, along with consequential damages in excess of $15,000,000.

WHEREFORE, Zahrans pray that the Honorable Court grant judgment in their behalf and against PNC as follows:

  a. Direct Defendant to delete all negative reporting to the credit reporting agencies,

  b. Enter judgment against PNC and for the benefits of Zahrans an amount of damages in excess of $10,000,000 caused by PNC's breach of contract,

  c. For consequential damages in an amount in excess of $15,000,000,

  d. For costs of this suit. And for legal and attorney fees

  e. For punitive damages in excess of $10,000,000 enough to deter PNC from similar conduct in the future against others.

## COUNT X

### Violation of Illinois Deceptive Practices Act Against PNC

157. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 82 relative to PNC, along with the relative Exhibits attached to this Count and specifically paragraphs 1-4, 8 and 42-49 as paragraph 1 of this count for Violation of the Illinois Deceptive Practices Act

Against PNC, known as 815 ILCS 505/2 IL Deceptive Practices Act against PNC,

commonly known as ILCS 815 505/ 101.

158. While Plaintiffs and Defendant were negotiating the settlement agreements, there existed in

the State of Illinois a statue called IL Deceptive and Consumer Fraud Act, 815 ILCS 5052

provides:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited
to the use of employment of any deception fraud, false pretense, false promise, misrepresentation
or the concealment, suppression or omission of any material fact, with intent that others rely
upon the concealment, suppression or omission of such material fact, or the use or employment
of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act",
approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful
whether any person has in fact been misled, deceived or damaged thereby. In construing this
section consideration shall be given to the interpretations of the Federal Trade Commission and
the federal courts relating to section 5(a) of the Federal Trade Commission Act.

159. The Defendant violated the provision of the IL Deceptive Practices Act as specifically

alleged in the above plead paragraphs in this count and as supported by the exhibits attached

to the Complaint.

160. Zahrans sustained damages as the direct and approximate result of Defendant's violation of

the IL statue governing deceptive practices in an amount in excess of $10,000,000, in

addition to consequential damages in excess of $15,000,000.

WHEREFORE the Plaintiffs pray for judgment against PNC for $10,000,000 for direct damages

and for consequential damages sustained as a result of PNC conduct in excess of $15,000,000

and for cost of suit and legal fees and for punitive damages in an amount in excess of $2,000,000

to deter Defendant of similar conduct in future.

COUNT XI

Estoppel against PNC

161. The Plaintiffs re-allege the relative paragraphs plead in par. 1-82 relating to PNC and paragraphs as paragraph 1 of this count for Estoppel.

162. PNC entered into a specific settlement agreement with Robin and Karen Zahran relating to the payment of the line of credit and the overdrawn checking account and the total release and abandonment of any and all claims by the parties.

163. Zahrans performed all of what was required of them by paying all the amount agreed upon and by refraining from filing a counter-claim to PNC's complaint filed in Du-Page County Circuit Court along with releasing his claim against NCB and PNC forever.

164. Zahrans relied on this Defendant's promises, commitments and representations as provided to them in exchange for the payment of $40,000 to PNC and releasing Zahrans' valuable claims.

165. The Defendant, contrary to agreement for the total release past and present of any and all claims being claimed refused to honor the agreement after Zahrans signed the agreement and abandoned their claims based on and in reliance on the settlement agreement provisions as agreed.

166. The Defendant, contrary to agreement and after the agreement was signed and entered into, reported the balance of the amount given as a consideration for Zahrans to release their claims as unpaid and as a written off amount of debt to the various credit reporting agencies, contrary to their promises and commitment specified in the settlement agreement.

167. PNC is herein estopped from claiming any defense or contention in opposition to what was specifically agreed upon between the parties through the settlement agreement or from

34

adopting a contrary position to what has been agreed upon and executed under IL law as described.

WHEREFORE the Plaintiff pray that the Honorable Court enter an a judgment order forbidding PNC from advancing any contention opposite or contradicting to what has been agreed upon by the parties pursuant to the settlement agreement and to direct PNC to delete all of the negative reporting's to CRAs and to pay Zahrans' costs of suit and legal fees and all of their consequential damages.

## COUNT XII

**Willful, or in the Alternate, Negligence and Failure to Investigate and Reinvestigate Plaintiffs' Credit Report Complaints and Negligent Violations of Fair Credit Reporting Act Against Transunion, Experian, Equifax, Bank of America, LaSalle Bank, PNC, Citi Bank, Discover and Republic.**

168. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 82 relative to the various Defendants, along with the attached relative exhibits attached to this Count, along with all related paragraphs to these Defendants for alleged negligence and failure to investigate the willful and/or negligent violations of the Fair Credit Reporting Act against all of the named Defendants in this count and in particular Experian, Equifax and TransUnion.

169. FCRA, 1681 I (a) (5) requires the credit reporting agencies to promptly delete, amend or modify information that is unverifiable or incomplete.

170. These Defendants named in this count willfully and, in the alternate, negligently reported the erroneous information as outlined in the allegations of this complaint in Zahrans' credit report and continued to erroneously and falsely report the wrongful reporting despite Zahrans' various protests over the years and despite Zahrans showing and providing copies of the proofs to these Defendants showing the credit reports are erroneously being reported.

171. Each of the Defendants refused to correct its respective report stating it verified the information with each furnishers of information appearing on Zahrans' credit reports.

172. Transunion, in the case of LaSalle, provided a wrong contact, phone number and address of LaSalle Bank despite Zahrans' numerous demands for accurate contact of LaSalle to clear the erroneous reporting.

173. The above named Defendants willfully or, in the alternate, negligently violated FCRA and its sub-paragraphs by failing to exercise their duties under the act and insure that obsolete, wrongful or erroneous information is deleted ,or properly resolve the disputes accurately with Plaintiffs, in violation of FCRA paragraph 1681(c) ,e, (a) and 15 USC 1681 a (f).

174. The Defendants failed to exercise their duties under FCRA to insure that they do not furnish customer reports absence permissible purposes, in violation of 15 USC 1681 (b) and failed to adopt reasonable and certain procedures to assure privacy and accuracy of consumer reports, 1681 (b), 1681 e(a), 1681 e(b) and 1681(b).

175. The Defendants CRA(S) supplied Capital One, AT&T, T-Mobile, Chase Bank, Citi Bank and Dish T.V. with Zahran's credit report without his authorization or consent and in fact in spite of his opposition and direction to the requesters not to order or have access to his report. Furthermore the CRAs refused to delete these inquiries from Zahran's credit report or investigate the offender's requests.

176. Under the FCRA provisions, CRA(s) must (1) follow reasonable procedures to assure the accuracy of information contained in the consumer report, (2) note the existence of any non-frivolous disputes concerning information in a consumer report and delete or correct any information of such corrective action, and (3) create proper and reasonable procedures of investigation and reinvestigation of consumer complaints pursuant to 15 USCS{{ 1681 e(b), 1681i(c), 1681s-2(c)(d) and (4) follow certain procedures of reinvestigation and verification of a consumer alleged inaccuracies and or incomplete information in their reports if a consumer disputes the completeness of any item or

information contained in his/her file in violation of 15 USC 1681 (a) and 1681(i) and (5)follow certain procedures in reporting public record information. 15 USC 1681k, 1681 L.

177. Under section 1681n + 1681o of FCRA, the Plaintiffs are entitled to take legal action based on Defendants' conduct and sue for willful and or negligent noncompliance of the statue.

178. The Plaintiffs sustained damages as direct and approximate result of Defendants' actions and conduct and violations of the Statue in excess of $10,000,000 and in consequential damages in excess of $15,000,000 rendering these Defendants liable to Plaintiffs for all these losses and for all damages sustained, plus court costs and attorney fees and punitive damages.

WHEREFORE, the Plaintiffs request judgment against each of the Defendants for the amounts of damages sustained for direct damages in an amount in excess of $10,000,000 as stated above in addition consequential damages in excess of $15,000,000along with cost of suit and legal fees, and for punitive damages in excess of $25,000,000 to deter these Defendants from committing similar conduct in the future.

## COUNT XIII

### Willful and Intentional, or the Alternate, Negligent Violations of Fair Credit Reporting Act 15 U.S.C 1681s-2(b) and 15 U.S.C.S. 1681s- (2) (b) against Bank of America, LaSalle, PNC, Barclay, Citi Bank, Discover Financial Services and Republic Bank

179. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 82 relative to the named defendants in this count, along with the relative exhibits attached as paragraph 1 of this count for Intentional and Willful reporting of erroneous information referencing Zahrans or in the alternate for gross negligence in reporting without caring if the information being reported to CRA(s) are accurate or in fact erroneous.

180. These Defendants willfully and knowingly knew the information they provided to the various credit reporting agencies were erroneous, inaccurate, and/or misleading.

181. It was unreasonable for these Defendants not to know and realize that the information each of them provided to CRA(s) was in fact erroneous and untrue in violation of the FCRA 15 USCA 1681s-2(a) which prohibits giving CRA(s) information if the creditor knows or consciously avoids knowing that the information is inaccurate.

182. The Defendants' acts were willful and wanton and in the alternate negligent in providing erroneous and inaccurate information to CRA(s) about Zahran's in violation of 15 USCS. 1681s-2(a), 1681s-2(a) (2), 1681-2(b) (1).

183. These Defendants failed to exercise reasonable care in providing information to the credit reporting agencies leading to statuary as well as common law liability for failure to report Zahrans' payment history and agreements with them accurately in violation of 15 USCS 1681s-2. 15 USCS 1681s- 2(a) (1) (A) which prohibits creditors from furnishing consumer information to a credit reporting agency if a creditor knows or consciously avoids knowing that the information is inaccurate.

184. USCS {1681s 2-(b) (1) imposes certain duties on a creditor who has been notified by a consumer reporting agency of a consumer's complaint under 1681s-2(a) (1) (A) and they were notified.

185. These Defendants failed to properly investigate Zahrans' consumer's complaint to the CRAs when requested to do so by the CRA's.

186. The named Defendants in this count knew their information provided to the various CRA's were in fact false, erroneous purposely misleading and reported them with malice and or sinister purpose to harm Zahrans.

187. The information provided to the CRA's were in fact false, misleading or obsolete and were furnished with malice and or willful intent to injure Plaintiffs and were in the alternate furnished negligently in noncompliance with FCRA 15 USC 1681h (e), and therefore qualifying these Defendants for punitive damage for willful violation. 15 USCS {1681n (a) (2).

188. The Defendants' acts and reporting are clear acts of false invasion of privacy.

38

189.  FCRA authorizes the court to award costs of the action together with reasonable attorney fees under 15 USCS {{ 1681n (a)(3), 1681 o (a)(2), moreover 15 USCS {{ 1681 n(a) allows punitive damages and attorney fees under 15 USCS 1681 n(a)(3) in addition to section 1681 o(a)(2).

190.  The Defendants persistently and willfully and with malice in violation of 1681 h (e) along with willful noncompliance of section 1681 n of the Act and committed the act of negligent noncompliance of the fair credit reporting act sub –paragraphs 1681a (f) and 1681(n), and section 1681o.

191.  The Defendants defamed, slandered and libeled Zahrans to the general public and the business community through their false and erroneous reporting, in spite of their promises, commitments and agreement to refrain and abstain from such conduct. The Defendants' reporting this are considered defamation per–se under IL law.

192.  Under FCRA, any person who willfully or negligently fails to comply with the Fair Credit Reporting Act is liable for damages. 15 USC {1681(n) (a), 1681 o (a).

193.  The Plaintiffs sustained direct damages as a direct and proximate result of these Defendants' conduct in an amount in excess of $10,000,000 in direct losses and in an amount in excess of $15,000,000 in consequential damages and costs and legal fees.

WHEREFORE, the Plaintiffs request from the Honorable Court to enter judgment against each of the Defendants for the amounts of damages sustained by Plaintiffs in direct damages in excess of $10,000,000 and for an amount for consequential damages in excess of $15,000,000 and for an amount in excess of $25,000,000 for punitive damages, in addition to cost of suit and legal fees, in excess of $5,000,000 to deter these Defendants from committing similar conduct in the future.

COUNT XIV

**Failure to Properly Investigate Zahrans' Complaint as Requested against Experian, Transunion and Equifax Referencing Their Credit Reports and**

**BOA, PNC, SLC, Barclay and LaSalle and Republic Bank**

194. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 82 relative to the named Defendants in this count, along with the relative Exhibits attached as paragraph 1 of this count for failure to properly and accurately investigate the erroneous information referencing Zahrans on their credit reports requested by the various CRA(s) or in the alternate for gross negligence in carrying out the proper required investigation in violation of FCRA provisions and sub-sections.

195. The named Defendants in this count failed to conduct reasonable investigation of Zahran's disputes submitted to them by the CRA(s) concerning Robin Zahran's protests of the information appearing on their credit report upon receiving the request from the credit reporting agencies as is required under 1681s-2(b)(1).

196. The Defendants had a duty after receiving a dispute pursuant to 1681(I)(a)(2) of FCRA governing the completeness and or accuracy of any and all information provided by these Defendants to the consumer reporting agencies failed to: (a) conduct an investigation with respect to the disputed information, (b) failed to review all relevant information provided to the consumer reporting agencies, (c) failed to report the results of the investigation to the consumer reporting agencies accurately, (d) Failed to correct the erroneous information given to the Credit reporting agencies if the investigation finds that any of information is incomplete or inaccurate and to report those results to all other consumer reporting agencies to which the person furnished the information to.

197. The Defendants failed to comply with and to maintain accurate files relating to their reports on Zahrans to the various credit reporting agencies pursuant to the F.C.R.A., definition as "furnisher of information."

198. The Defendants failed to carry out the required investigation through detailed inquiry or systematic examination of Plaintiffs' complaint to the credit reporting agencies, and failed to conduct a reasonable investigation of their records to determine whether the disputed information can be verified in violation of the FCRA 1681s 2(b) which requires furnisher to investigate and respond promptly.

199. The Defendants avoided carrying out proper "investigation" as is required by USCS 1681s-2(b) (1).

200. The Plaintiffs sustained damages as a direct and proximate result of these Defendants' failure to carryout proper investigation of the information appearing on Zahrans' credit reports, therefore handicapping Zahrans from their abilities to borrow funds from all financial sources as a result.

201. The Plaintiffs sustained direct damages as a direct and proximate result of these Defendants' conduct in an amount in excess of $10,000,000 in direct losses and in an amount in excess of $15,000,000 in consequential damages and costs and legal fees.

WHEREFORE, the Plaintiffs request from the Honorable Court to enter judgment against each of the Defendants for the amounts of damages sustained by Plaintiffs for or approximate direct damages in excess of $10,000,000 and for an amount for consequential damages in excess of $15,000,000 and for an amount in excess of $25,000,000 for punitive damages to deter these Defendants from committing similar conduct in the future in addition to cost of suit and legal fees.

## COUNT XV

**Defamation Per-Se, Slander and Libel against BOA, LaSalle, SLC, Barclay, PNC, Experian, Equifax and Transunion, Republic Bank**
**(This account is plead in the alternate to the count for causes of action plead for various violations of the Fair Credit Reporting Act)**

202. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 82 relative to the various Defendants, along with the relative exhibits attached to this complaint related to this count for Slander and Liable as paragraph 1 of this count for Defamation, Slander and Libel against the named Defendants in this count.

41

203. The Defendants persisted on keeping the false negative information provided and disseminated by them displayed to the entities and persons who were interested in transacting business with Zahrans and to the various credit reporting agencies despite Zahrans' constant demands for the removal of these negative reports by the Defendants.

204. Defendants made, published and continue to publish up to present day the derogatory and slanderous statements motivated by malice against Zahrans up to present day.

205. Defendants, at all times throughout while providing the slanderous and defamatory statements, knew their actions would harm Zahrans personally and in their businesses but persisted into their actions and continued to report false statements referencing Zahrans in order to harm them personally and in their business and business interests and reputation, knowing that these statements were false and contrary to the promises made and contrary to agreement and settlement executed with Zahrans.

206. The Plaintiffs suffered and continues to suffer from Defendants' statements in their personal and business financial affairs causing Zahrans' damages in excess of $10,000,000, and consequential damages in excess of $15,000,000.

207. In the alternate, the Defendant negligently and recklessly continued to publish these false statements without caring if the statements were true or false, motivated by malice because of Zahrans' insistence on Defendant's performance of their obligations pursuant to their respective agreements with Zahrans and/or pursuant to the settlement agreements entered into applicable and governmental regulations.

208. Defendants published statements were made with malice and total disregard to Zahrans' interests and are therefore considered defamation (per-se), under Illinois Law.

209. The Plaintiffs suffered and continues to suffer and sustain damages as a direct and approximate result of Defendant's statements in an amount in excess of $10,000,000 in direct or approximate damages and for an amount of consequential damages in excess of $15,000,000.

WHEREFORE, the Plaintiffs pray that the Honorable Court grant them judgment against the Defendants and each one of them for an amount in excess of $10,000,000 for direct damages and for consequential damages in excess of $15,000,000 in addition to costs of suit and legal and attorney fees and for punitive damages in an amount in excess of $25,000,000 against each of the Defendants to deter them from committing similar conduct in the future against poor others.

11-14/2013

Respectfully submitted,

Robin Zahran

Karen Zahran

43